**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **AREU STUDIOS, LLC,** | |
| **Debtor.** | **CASE NO. 20-71228-PMB** |

**DISCLOSURE STATEMENT FOR**
**PLAN OF REORGANIZATION**

**Dated this 11ᵗʰ day of November, 2020**

Filed by:

Areu Studios, LLC

Attorneys for Debtor
Cameron M. McCord
Jones & Walden, LLC
699 Piedmont Avenue, NE
Atlanta, Georgia 30308
(404) 564-9300

## I.      Introduction and General Information

This disclosure statement ("Disclosure Statement") is submitted by Areu Studios, LLC ("Debtor") to provide information to parties in interest about the Chapter 11 Plan (the "Plan") filed by Debtor.  This introductory section is qualified in its entirety by the detailed explanations which follow and the provisions of the Plan.

This Disclosure Statement sets forth certain information regarding Debtor's prepetition history and events that have occurred during Debtor's Chapter 11 case.  This Disclosure Statement also describes the Plan, alternatives to the Plan, effects of confirmation of the Plan, and the manner in which Distributions will be made under the Plan.  In addition, this Disclosure Statement discusses the confirmation process and voting procedures that holders of Claims in Impaired Classes must follow for their votes to be counted.

**Parties voting on the Plan should read both the Plan and this Disclosure Statement.**

### A.      Definitions

Unless otherwise defined, capitalized terms used in this Disclosure Statement have the meanings ascribed to them in the Plan.  In the event of an inconsistency between the Disclosure Statement and the Plan, the terms of the Plan shall govern and such inconsistency shall be resolved in favor of the Plan.  The Filing Date, as defined in the Plan, shall mean September 6, 2019 and the Effective Date, as defined in the Plan, shall mean the date that is 60 days after the entry of a Confirmation Order.

### B.      The Disclosure Statement

The primary purpose of this Disclosure Statement is to provide parties entitled to vote on the Plan with adequate information so that they can make a reasonably informed decision prior to exercising their right to vote to accept or reject the Plan.

The Bankruptcy Court's approval of this Disclosure Statement constitutes neither a guaranty of the accuracy or completeness of the information contained herein, nor an endorsement of the Plan by the Bankruptcy Court.

When and if confirmed by the Bankruptcy Court, the Plan will bind Debtor and all holders of Claims against and Interests in Debtor, whether or not they are entitled to vote or did vote on the Plan and whether or not they receive or retain any Distributions or property under the Plan.  Thus, you are encouraged to read this Disclosure Statement carefully.  In particular, holders of Impaired Claims who are entitled to vote on the Plan are encouraged to read this Disclosure Statement, the Plan, and any exhibits to the Plan and Disclosure Statement, carefully and in their entirety before voting to accept or reject the Plan.  This Disclosure Statement contains important information about the Plan, the method and manner of distributions under the

Plan, considerations pertinent to acceptance or rejection of the Plan, and developments concerning this case.

## II.      Voting on the Plan and Confirmation Process

### A.      Voting Instructions

Accompanying this Disclosure Statement are copies of the following documents: (1) the Plan; and (2) a Ballot to be executed by holders of Claims to accept or reject the Plan. The Ballot contains voting instructions. Please read the instructions carefully to ensure that your vote will count.

The Disclosure Statement, the form of Ballot, and the related materials delivered together herewith (collectively, the "Solicitation Package"), are being furnished to Holders of Claims in Classes 1 through 9 for the purpose of soliciting votes on the Plan.

If you did not receive a Ballot in your Solicitation Package, and believe that you should have received a Ballot, please contact, Jones & Walden, LLC, 699 Piedmont Avenue, NE, Atlanta, Georgia, 30308, (404) 564-9300 (Attn: Cameron M. McCord, Esq.).

**In order for your Ballot to count, it must be received within the time indicated on the Ballot and the Ballot must clearly indicate your Claim, the Class of your Claim and the amount of your Claim.**

**By enclosing a Ballot, Debtor is not admitting that you are entitled to vote on the Plan, is not admitting that your Claim is allowed as set forth on the Ballot, and is not waiving any right to object to your vote or your Claim.**

### B.      Who May Vote

Only a holder of an Allowed Claim classified in an Impaired Class is entitled to vote on the Plan. As set forth in section 1124 of the Bankruptcy Code, a class is "Impaired" if legal, equitable, or contractual rights attaching to the claims or equity interests of that class are modified or altered.

Any class that is "unimpaired" is not entitled to vote to accept or reject a plan of reorganization and is conclusively presumed to have accepted the Plan.

A Claim must be "allowed" for purposes of voting in order for such creditor to have the right to vote. Generally, for voting purposes a Claim is deemed "allowed" absent an objection to the Claim if (1) a proof of claim was timely filed, or (ii) if no proof of claim was filed, the Claim is identified in a Debtor's Schedules as other than "disputed," "contingent," or "unliquidated," and an amount of the Claim is specified in the Schedules, in which case the Claim will be deemed allowed for the specified amount. In either case, when an objection to a Claim is filed, the creditor holding the Claim cannot vote unless the Bankruptcy Court, after notice and hearing, either overrules the objection, or allows the Claim for voting purposes.

Debtor in all events reserve the right through the claim reconciliation process to object to or seek to disallow any claim for distribution purposes under the Plan.

### C.    Requirements of Confirmation

The Bankruptcy Court can confirm the Plan only if all the requirements of § 1129 of the Bankruptcy Code are met. Those requirements include the following:

1.    The Plan classifies Claims and Interests in a permissible manner;

2.    The contents of the Plan comply with the technical requirements of the Bankruptcy Code;

3.    The Plan has been proposed in good faith and not by any means forbidden by law;

4.    The disclosures concerning the Plan are adequate and include information concerning all payments made or promised in connection with the Plan, as well as the identity, affiliations, and compensation to be paid to all officers, directors, and other insiders; and

5.    The principal purpose of the Plan is not the avoidance of tax or the avoidance of the securities laws of the United States.

In addition to the confirmation requirements described above, Debtor hopes that the Plan will be approved by all Impaired Classes of Claims entitled to vote. If, however, the Plan has not been approved by all Impaired Classes of Claims, the Court may nevertheless "cram down" the Plan over the objections of a dissenting Class. The Plan may be "crammed down" so long as it does not discriminate unfairly, is fair and equitable with respect to each dissenting Class of Claims, and at least one Impaired Class has voted in favor of the Plan without regard to any votes of insiders. If necessary, Debtor will seek to "cram down" the Plan.

### D.    Acceptance or Rejection of the Plan and Cram Down

The Class containing your Claim will have accepted the Plan by the favorable vote of a majority in number and two-thirds in amount of Allowed Claims actually voting. In the event that any Impaired Class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan if an Impaired Class accepts it and if, as to each Impaired Class that has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." If you hold an Allowed Secured Claim, the Plan is fair and equitable if: (a) you retain your lien and receive deferred cash payments totaling the allowed amount of your Allowed Secured Claim, (b) the collateral is sold and your Lien attaches to the proceeds of the sale, or (c) you are otherwise provided with the "indubitable equivalent" of your Allowed Secured Claim. If you hold a Claim that is not an Allowed Secured Claim, and is not entitled to priority under § 507 of the Bankruptcy Code, the Plan is fair and equitable if you receive property of a value equal to the

allowed amount of your Claim or if no junior Class receives or retains on account of such junior interest any property.

###### E.    Confirmation Hearing

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan ("Confirmation Hearing") at the time indicated in the Order approving this Disclosure Statement and providing Notice of Confirmation Hearing (the "Solicitation Order"). The Confirmation Hearing may be adjourned from time to time without further notice except for announcement at the Confirmation Hearing or notice to those parties present at the Confirmation Hearing.

###### F.    Objections to Confirmation

As will be set forth in the Solicitation Order, any objections to confirmation of the Plan must be in writing, set forth the objector's standing to assert any such objection, and must be filed with the Bankruptcy Court and served on counsel for Debtor. The Solicitation Order contains all relevant procedures relating to the submission of objections to confirmation and should be reviewed in its entirety by any party who has an objection to confirmation.

###### G.    Whom to Contact for More Information

If you have any questions about the procedure for voting on your Claim or the packet of materials you received, please contact Cameron M. McCord at Jones & Walden, LLC at the address indicated below or by telephone at (404) 564-9300.

If you wish to obtain additional copies of the Plan, this Disclosure Statement, or the exhibits to those documents, at your own expense, unless otherwise specifically required by Bankruptcy Rule 3017(d), please contact Jones & Walden, LLC by one of the following methods:

| Via U.S. Mail: | Via Facsimile: | Via Email: |
|---|---|---|
| Jones & Walden, LLC | (404) 564-9301 | lbrown@joneswalden.com |
| 699 Piedmont Avenue, NE | Attn: Lauren Brown | |
| Atlanta, GA 30308 | | |
| Attn: Lauren Brown | | |

#### III.    Historical Background

###### A.    Description of Debtor

Debtor is a Georgia limited liability company which is managed by Ozzie Areu. Areu Studios operates an approximately 29-acre studio lot, which consists of five sound stages, an 11-home suburban backlot and four administration buildings, and is located in a federal opportunity zone in Fulton County (the "Studio").

Debtor was formed in 2018 for the purpose of operating the Studio. In December 2018, Debtor's subsidiary, Good Deed 317, LLC ("Good Deed"), acquired the real property upon which the Studio is located from Tyler Perry Studios where Ozzie Areu was president for over twelve years. Good Deed obtained funding to close on the real property from LV Atlanta, LLC ("LV") in December 2018. Debtor was in the process of obtaining refinancing at the beginning of 2020. In early March 2020, the Studio was forced to shut down due to Covid-19 and did not reopen until July 2020. The uncertainty of the film industry amidst Covid-19 also caused the refinancing efforts to fall through. During this time, Debtor was unable to make rent payments to Good Deed causing Good Deed to default on its payment to LV in September 2020. Good Deed and LV entered into a forbearance agreement regarding the default through November 1, 2020. The Debtor is the 100% member of Good Deed. LV holds a security interest in the membership interest of Good Deed. Debtor filed the instant bankruptcy to reorganize its financial affairs without the threat of collection or assignment of the membership interests of Good Deed.

### B.     Prepetition Assets and Liabilities

Debtor's had the following assets as of the Filing Date: (i) Bank of America Operating Account $71,070.13; (ii) Bank of America Operating Account with $.017; and (iii) goodwill with an unknown value.

Debtor's has liabilities consisting of (i) general unsecured claims totaling approximately $1,743,936, (ii) cure claims in the amount of $387,777 and (iii) insider claims in the amount of $2,379,729.00.

## IV.     The Chapter 11 Case

### A.     Professionals

Debtor filed an application ("Application") requesting authorization to retain the law firm of Jones & Walden, LLC ("J&W") to serve as bankruptcy counsel in this Case. The application is pending before the Court.

## V.     Summary of the Plan

**The following summary of the Plan provides only a brief description of its provisions. The summary is qualified in its entirety by the more detailed descriptions of the Plan in the Disclosure Statement and by the terms of the Plan itself.**

The Plan provides for payments to creditors of Debtor. Debtor believes that any alternative to confirmation of the Plan, such as liquidation, would result in significant delays, litigation, job loss and/or impaired recoveries. **For these reasons, Debtor urges you to return your Ballots accepting Debtor's Plan.**

The Plan contemplates the reorganization and ongoing business operations of Debtor and the resolution of the outstanding Claims against and Interests in Debtor pursuant to sections

1129(b) and 1123 of the Bankruptcy Code. The Plan classifies all Claims against and Interests in Debtor into separate Classes.

## VI.    Description of the Plan

### A.    Retention of Property by Debtor

Upon confirmation, Debtor will retain all of the property of the estate free and clear of liens, claims, and encumbrances not expressly retained by Creditors under the Plan. Debtor will have the rights and powers to assert any and all Causes of Action (defined as all causes of action, choses in action, claims, rights, suits, accounts or remedies belonging to or enforceable by Debtor, including Avoidance Actions, whether or not matured or unmatured, liquidated or unliquidated, contingent or noncontingent, known or unknown, or whether in law or in equity, and whether or not specifically identified in Debtor's schedules). The Disclosure Statement and Plan are filed with a full reservation of rights.

### B.    Parties Responsible for Implementation of the Plan

Upon confirmation, Debtor will be charged with administration of the Case. Debtor will be authorized and empowered to take such actions as are required to effectuate the Plan. Debtor will file all post-confirmation reports required by the United States Trustee's office. Debtor will also file the necessary final reports and will apply for a final decree as soon as practicable after substantial consummation and the completion of the claims analysis and objection process. Debtor shall be authorized to reopen this case after the entry of a Final Decree to enforce the terms of the Plan including for the purpose of seeking to hold a party in contempt or to enforce the confirmation or discharge injunction or otherwise afford relief to Debtor.

### C.    Liabilities of Debtor

Debtor will not have any liabilities except those expressly assumed under the Plan. Debtor will be responsible for all ongoing expenses and payments due and owing under the confirmed Plan.

### D.    Funding of the Plan

The source of funds for the payments pursuant to the Plan is the operations of the Studio.

### E.    Provisions Regarding Executory Contracts

As of the Effective Date of the Plan, Debtor will assume all executory contracts regarding insurance on the Property. Debtor will also assume (i) the Revenue Sharing Agreement and (ii) Studio Sublease Lease Agreement by and between Debtor and Cinelease both dated April 3, 2019.

Any unexpired leases or executory contracts which are not assumed under the Plan or are the subject of a pending motion to assume as of the Effective Date shall be deemed rejected

pursuant to Section 365 of the Bankruptcy Code on the Effective Date.  Under the terms of the Plan, a proof of claim for damages arising from such rejection must be filed in compliance with the Bankruptcy Rules on or before sixty (60) days after the Confirmation Date.  Any claims which are not timely filed will be disallowed and discharged.

### F.      Avoidance Actions and Retained Rights

The Plan provides that Debtor shall retain all rights of action against others. Debtor holds claims against (i) The Areu Group in the amount of $121,000.00 and (ii) Areu Bros, LLC in the amount of $669,000.00.  Neither entity is operating and it is likely that recovery will not occur on these receivables.  The Plan also provides that Debtor shall retain "Avoidance Actions" under Chapter 5 of the Bankruptcy Code. Debtor may also have Claims against others which are retained.  Notwithstanding the foregoing, Debtor is not aware of any preference claims or fraudulent conveyance claims, including any listed in its schedules that in the exercise of its reasonable business judgment are worth pursuing.

### G.      Treatment of Claims and Interests

A brief summary of the Classes, the treatment of each Class, and the voting rights of each Class is set forth below.  A complete description of the treatment of each Class is set forth in Article 4 of the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims.

Debtor reserves the right to pay any claim in full at any time in accordance with the terms of the Plan (i.e. at the percentage distribution designated in the Plan and including any accrued and unpaid interest, if any) without prepayment penalty.

### 6.1      Class 1: Secured or Priority Claim of the Internal Revenue Service

Debtor is not aware of any claim held by the Internal Revenue Service ("IRS"). However, in the event the Court determines the IRS holds an Allowed Class 1 IRS Tax Claim for secured or priority taxes, Debtor shall pay such Allowed Class 1 IRS Tax Claim in full in 36 equal monthly payments commencing on the Effective Date and continuing by the 28th day of each subsequent month (or the next Business Day if the 28th day is not a Business Day) with interest accruing at the annual rate of 4% unless the IRS agrees to a lower interest rate or longer payment term.  Any third-party payments or payments in excess of the scheduled distribution pursuant to Class 1 received by IRS after the Filing Date shall be applied to the principal tax obligation owed by Debtor pursuant to Class 1.  Notwithstanding anything to the contrary herein, Debtor shall pay the full amount of the Allowed Class 1 IRS Tax Claim within 60 months of the Filing Date

A failure by the Debtor to make a payment under Class 1 to the IRS pursuant to the terms of the Plan shall be an event of default as to the IRS.  In the event of a default under Class 1, the IRS must send a Default Notice to Debtor in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the

amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries. Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice. In the event of an uncured default in payments under Class 1 to the IRS and following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the IRS may (a) enforce the entire amount of its then outstanding Allowed Class 1 IRS Priority Tax Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Allowed Class 1 IRS Priority Tax Claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The amount of any claim of the IRS that is not assessable prior to the Filing Date or treated as arising before the Filing Date pursuant to 11 U.SC. §502(i), and the right of the IRS, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the IRS would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code. However, the rights and treatment of the IRS and obligations and liability of Debtor or its property regarding any claim of the IRS against Debtor which was assessable prior to the Filing Date shall be treated and fixed in accordance with the Plan, and any additional or other claims assessable on or prior to the Filing Date or treated as arising before the Filing Date pursuant to 11 U.SC. §502(i), and not timely asserted by the IRS in accordance with the Bankruptcy Code and the Plan and in all instances prior to entry of the Confirmation Order, shall be forever barred. Debtor reserves the right to pay any tax claim in full at any time.

The Claim of the Class 1 Creditor is Impaired by the Plan and the holder of the Class 1 Claim is entitled to vote to accept or reject the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. Debtor reserves the right to object to any and all claims.

### 6.2     Class 2: Secured or Priority Tax Claim of Georgia Department of Revenue

Debtor is not aware of any claim held by the Georgia Department of Revenue ("GDR"). However, in the event the Court determines the GDR holds an Allowed Class 2 GDR Tax Claim for secured or priority taxes, Debtor shall pay such Allowed Class 2 GDR Tax Claim in full in 36 equal monthly payments commencing on the Effective Date and continuing by the 28th day of each subsequent month (or the next Business Day if the 28th day is not a Business Day) with interest accruing at the annual rate of 6.5% unless the GDR agrees to a lower interest rate or longer payment term. Any third-party payments or payments in excess of the scheduled distribution pursuant to Class 2 received by GDR after the Filing Date shall be applied to the principal tax obligation owed by Debtor pursuant to Class 2. Notwithstanding anything to the contrary herein, Debtor shall pay the full amount of the Allowed Class 2 GDR Tax Claim within 60 months of the Filing Date.

A failure by the Debtor to make a payment under Class 2 to the GDR pursuant to the terms of the Plan shall be an event of default as to the GDR. In the event of a default under

Class 2, the GDR must send a Default Notice to Debtor in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries.  Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice.  In the event of an uncured default following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the GDR may (a) enforce the entire amount of its then outstanding Allowed Class 2 GDR Priority Tax Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Allowed Class 2 GDR Priority Tax Claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The amount of any claim of GDR that is not assessable prior to the Filing Date or treated as arising before the Filing Date pursuant to 11 U.SC. §502(i), and the right of GDR, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of GDR would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code. However, the rights and treatment of GDR and obligations and liability of Debtor or its property regarding any claim of GDR against Debtor which was assessable prior to the Filing Date shall be treated and fixed in accordance with the Plan, and any additional or other claims assessable on or prior to the Filing Date or treated as arising before the Filing Date pursuant to 11 U.SC. §502(i), and not timely asserted by GDR in accordance with the Bankruptcy Code and the Plan and in all instances prior to entry of the Confirmation Order, shall be forever barred.  Debtor reserves the right to pay any tax claim in full at any time.

The Claim of the Class 2 Creditor is Impaired by the Plan and the holder of the Class 2 Claim is entitled to vote to accept or reject the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. Debtor reserves the right to object to any and all claims.

### 6.3    Class 3: Cinelease, Inc.

Upon the entry of the Confirmation Order, Debtor will assume the April 3, 2019 (i) Revenue Sharing Agreement and (ii) Studio Sublease Agreement by and between Debtor and Cinelease, Inc. (the "Cinelease Agreements"). Debtor shall pay the arrearage owed by Debtor, if any, in 6 equal monthly payments plus interest at the rate of 4.25% per annum, with the first such payment due on the 28th day of the 1st full month following the Effective Date and continuing by the 28th day of each subsequent month, and a final payment for the balance of any paid in a balloon payment on the 28th day of the 12th full month following the Effective Date.

Class 3 is Impaired and the Holder of an Allowed Class 3 Claim is entitled to vote to accept or reject the Plan.  Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims

### 6.4    Class 4: Priority and Secured Tax Claims of Governmental Units Not Otherwise Classified in the Plan

Class 4 shall consist of any Priority or Secured Claim of a governmental unit entitled to priority under 11 U.S.C. §507(a)(8) or §502(i), which are not otherwise specifically classified in the Plan ("Class 4 Governmental Unit Tax Claim").  Debtor is not aware of any Holders of Class 4 Governmental Unit Tax Claim not otherwise classified in the Plan.  In the event there are Allowed Holders of Class 4 Governmental Unit Tax Claims, Debtor shall pay such Allowed Class 4 Government Unit Tax Claims at the rate of $100 per month commencing on the 28th day of the first full month following the Effective Date and continuing by the 28th day of each subsequent month (or the next Business Day if the 28th day is not a Business Day), with interest accruing at the annual rate of 4% (or at the rate otherwise as required by the Bankruptcy Code), with a final balloon payment on the 5th anniversary of the Filing Date (i.e. October 29, 2025) unless such holder agrees to a longer payment term, which such agreement may be communicated by continued acceptance of monthly payments after October 29, 2025.  Any third-party payments or payments in excess of the scheduled distribution pursuant to Class 4 received by a holder shall be applied to the principal tax obligation owed by Debtor pursuant to Class 4. Debtor's Class 4 payments shall be applied (i) first to interest accruing under the Plan, (ii) second to the principal balance and (iii) then to interest which accrued prior to the Effective Date, if any.  Debtor reserves the right to pay any Class 4 Governmental Unit Tax Claim in full at any time.

Debtor shall pay any claim of a Class 4 Claim Holder assessable, arising prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) on the terms herein, and holders of Class 4 Claims shall be permanently enjoined from seeking payment in excess of the amounts provided for in the Plan for such claims.

A failure by the Debtor to make a payment under Class 4 to a holder of a Class 4 Governmental Unit Tax Claim pursuant to the terms of the Plan shall be an event of default under Class 4 as to such holder.  In the event of a default under Class 4, the applicable holder must send a Default Notice to Debtor in accordance with Article 2.3 of the Plan. Such Default

11

Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries. Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice. In the event of an uncured default following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the Governmental Unit may (a) enforce the entire amount of its then outstanding Allowed Class 4 Governmental Unit Tax Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Allowed Class 4 Governmental Unit Tax Claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The amount of any claim of a holder of Class 4 Governmental Unit Tax Claim that is not assessable prior to the Filing Date or treated as arising before the Filing Date pursuant to 11 U.SC. §502(i), and the right of Governmental Unit, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of Governmental Unit would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code. However, the rights and treatment of Governmental Unit and obligations and liability of Debtor or its property regarding any claim of Governmental Unit against Debtor which was assessable prior to the Filing Date shall be treated and fixed in accordance with the Plan, and any additional or other claims assessable on or prior to the Filing Date or treated as arising before the Filing Date pursuant to 11 U.SC. §502(i), and not timely asserted by Governmental Unit in accordance with the Bankruptcy Code and the Plan and in all instances prior to entry of the Confirmation Order, shall be forever barred. Debtor reserves the right to pay any tax claim in full at any time.

The Holder of an Allowed Class 4 Governmental Unit Priority Tax Claim is impaired and entitled to vote to accept or reject the Plan. Nothing contained herein shall prohibit Debtor from objecting to the Class 4 Claims for any reason.

**6.5      Class 5: Secured Claim of LV Atlanta, LLC**

Class 5 consists of the first priority secured claim of LV Atlanta, LLC ("LV") ("Class 5 Secured Claim"). LV holds a first priority lien on all of Debtor's membership interests in and to Good Deed 317, LLC as set forth in the Pledge and Security Agreement by and between Debtor and LV Atlanta, LLC dated December 13, 2018 and as further set forth in that certain UCC Financing Statement No. 0602018-10262 filed and recorded in the Fulton County, Georgia real property records on December 14, 2018 (the "LV Collateral"). The Class 5 Secured Claim is being paid in full with interest pursuant to the Plan of Reorganization filed in the Good Deed 317, LLC Bankruptcy Case No. 20-71227, pending in the United States Bankruptcy Court, Northern District of Georgia ("Good Deed 317 Plan of Reorganization").

LV shall retain its lien and security interest in the LV Collateral to the same priority and validity as existed on the Filing Date; however, LV shall release its lien on and security interest in the LV Collateral for a payment of the then outstanding allowed Class 5 Secured Claim. Upon request by Debtor, LV shall promptly provide a payoff letter including the then outstanding balance of the Class 5 Secured Claim and an accounting including all credits and debits,

including all payments received and their application.

Nothing herein shall constitute an admission as the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims for any reason.

The holder of the Class 5 Secured Claim is impaired and entitled to vote to accept or reject the Plan.

### 6.6    Class 6: General Unsecured Claims

Class 6 shall consist of the general unsecured claims.  On the 1st day of the 36th month following the Effective Date, Debtor shall pay the General Unsecured Creditors in full plus interest accruing at the annual rate of 4.25% from the Effective Date until the date of payment. Debtor anticipates, but does not warrant, the following Holders of Class 7 General Unsecured Claims and the following distributions:

| Anticipated Holder | Claim | Estimated Percentage Total Distribution |
|---|---|---|
| Adam Keen | 122,500.00 | 100% |
| Clayton Robert Barker III | 25,386.00 | 100% |
| Develop, LLC | 35,000.00 | 100% |
| Endavo Media & Communications | 65,912.00 | 100% |
| Eric Cape | 110,000.00 | 100% |
| Johnson Controls | 56,220.00 | 100% |
| Mary Propes | 350,000.00 | 100% |
| Mike Phelps | 110,000.00 | 100% |
| Miriam Miras | 290,000.00 | 100% |
| Palmer Productions | 50,000.00 | 100% |
| Rene Jongsman | 125,000.00 | 100% |
| Rinehart Security & Consulting | 131,501.00 | 100% |
| Sophia Hellena | 52,083.00 | 100% |
| Spot On Content LLC | 187,500.00 | 100% |
| United Healthcare Insurance Company | 26,545.67 | 100% |
| **Total** | 1,737,647.67 | 100% |

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim.  Debtor reserves the right to object to any and all claims.

The holders of Class 6 Claims are impaired and entitled to vote to accept or reject the Plan.

13

**6.7    Class 7: Unsecured Convenience Class**

Class 7 shall consist of unsecured claims less than or equal to $10,000.00. Holders of Allowed Class 7 Claims shall be paid in full plus interest accruing at the rate of 4.25% per annum from the Effective Date on the first anniversary of the Effective Date. Debtor anticipates payments to unsecured creditors based upon the following Holders of Class 7 Claims and following distributions:

| Anticipated Holders | Estimated Total Distribution | Estimated Percentage Total Distribution |
|---|---|---|
| Corporate Creations Network | $1,049.00 | 100% |
| ECS, Inc. | $4,899.00 | 100% |
| Green Fern Tree Service | $5,750.00 | 100% |
| Humana | $6,540.00 | 100% |
| Sohonet | $1,500.00 | 100% |
| Uline | $1,727.00 | 100% |
| VSC Fire Security | $1,160.00 | 100% |
| **Total** | $22,625.00 | 100% |

The Claim of any Class 7 Creditor is Impaired by the Plan and the holder of the Class 7 Claim is entitled to vote to accept or reject the Plan.

Nothing contained herein shall prohibit the Debtor from objecting to the Class 7 Claims for any reason.

**6.8    Class 8: Interest Claims**

Class 8 consists of Interest Claims. The membership interests of the Debtor shall be retained as follows:

| | Membership Units | Approximate Percentage Ownership |
|---|---|---|
| Areu Family Ventures, LLC | 51,000 | 51% |
| Areu Bros, LLC | 16,000 | 16% |
| Behind the Curtain Funding, LLC | 5,000 | 5% |
| Windmill Investments, LLC | 8,500 | 8.5% |

| | | |
|---|---|---|
| Sophia-Hellena Productions, Inc. | 1,000 | 1% |
| Maxx Upside, LLC | 5,000 | 5% |
| Spot on Content, LLC | 6,250 | 6.25% |
| Steven Blum | 3,000 | 3% |
| Mary Propes | 3,750 | 3.75% |
| Bear Dog Enterprises, LLC | 500 | .5% |

The holders of Class 8 Claims are unimpaired.

### 6.9    Class 9: Unsecured Insider Claims

Class 9 shall consist of the general unsecure claims of insiders.  Debtor will not make any distributions to Holders of general unsecured claims who are insiders.  Debtor shows the following Holders are insiders who hold general unsecured claims.  Accordingly, the claims of Holders of Class 9 Claims will be discharged without payment of any distribution.

| Holder | Estimated Allowed Claim |
|---|---|
| Good Deed 317, LLC | $1,676,442.00 |
| Ozzie Areu | $703,287.00 |

### 6.10    Sale Procedures

After the Confirmation Date, Debtor is authorized to sell or refinance its assets free and clear of liens, claims and encumbrances as set forth herein (the "Sale Procedures").   In the event the applicable assets are subject to secured claims, Debtor is only authorized to sell or refinance such property for any amount (a release amount) that is at least equal to the outstanding amount of Allowed Secured Claims securing such property (the "Release Amount."  The Release Amount, after payment of customary closing costs including broker fees and other items customarily attributed to the seller (in a sale) and borrower (in a refinancing), shall be paid at closing as follows: (i) first to cover any *ad valorem* property taxes associated with the particular asset and (ii) then secured claims in order of priority. Any net proceeds from any such sale available after closing shall be paid to fund Debtor's other obligations as set forth in the Plan.

The Bankruptcy Court shall retain jurisdiction to reopen the Bankruptcy Case, if applicable, and resolve any disputes regarding the Sale Procedures herein.

### 6.    Administrative Expenses

Treatment of administrative expense claims is set forth in Article 5 of the Plan and summarized below.

7.1.    Summary.    Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims against Debtor are not classified for purposes of voting on, or receiving Distributions under this Plan.  Holders of such Claims are not entitled to vote on this

Plan.  All such Claims are instead treated separately in accordance with this Article V and in accordance with the requirements set forth in section 1129(a)(9)(A) of the Bankruptcy Code.

With respect to potential Administrative Expense Claims, Debtor, pursuant to Court order, retained the law firm of Jones & Walden, LLC ("Firm") to serve as bankruptcy counsel. As set forth in the employment application and supporting documents, the Firm received a prepetition retainer in the amount of $43,885.50.  As of the date hereof, the fees and expenses incurred by the Firm have not exceeded the retainer.  Debtor shall pay any unpaid allowed Administrative Expense Claim held by the Firm on the Effective Date unless otherwise agreed to by the Firm. The Firm shall retain its security interest in the pre-petition retainer.  The Firm retains its right to assert an attorney lien on any property administered under the Plan or otherwise recovered in this case. Debtor is paying post-petition bills and does not expect any claims for unpaid post-petition goods and services other than possible professional fees.  Debtor will incur quarterly trustee fees which Debtor intends to pay when due.

7.2.    Administrative Expense Claims.

7.2.1.   Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (1) the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such holder and Debtor, or (iv) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims representing obligations incurred by Debtor in the ordinary course of business after the Filing Date, or otherwise assumed by Debtor on the Effective Date pursuant to this Plan, including any tax obligations arising after the Filing Date, will be paid or performed by Debtor when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

7.2.2.   Except as otherwise provided in this Plan, any Person holding an Administrative Expense Claim, shall file a proof of such Administrative Expense Claim with the Bankruptcy Court within thirty (30) days after the Confirmation Date.  At the same time any Person files an Administrative Expense Claim, such Person shall also serve a copy of the Administrative Expense Claim upon counsel for Debtor.  Any Person who fails to timely file and serve a proof of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claims by Debtor or the Estate.

7.2.3.   Any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within thirty (30) days after the Confirmation Date or by such other deadline as may be fixed by the Bankruptcy Court.

The Plan provides that Debtor may pay professional fees incurred after Confirmation of the Plan without Court approval.  Debtor shall pay all pre-confirmation fees of professionals as payment of same is approved by the Court.

7. **Tax Consequences**

Tax consequences resulting from confirmation of the Plan can vary greatly among the various Classes of Creditors and holders of Interests, or within each Class. Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes. Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, this discussion is intended to be general in nature only. No specific tax consequences to any Creditor or holder of an Interest are represented, implied, or warranted. Each holder of a Claim or Interest should seek professional tax advice.

**The proponent assumes no responsibility for the tax effect that consummation of the Plan will have on any given Holder of a Claim or Interest. Holders of Claims or Interest are strongly urged to consult their own tax advisors covering the federal, state, local and foreign tax consequences of the Plan to their individual situation.**

8. **Liquidation Analysis**

Holders of claims would not receive any greater return in a liquidation of Debtor's assets. Moreover, in liquidation, the Chapter 7 trustee would incur costs associated with liquidation, such as broker fees and professionals. The details of a hypothetical liquidation are as follows: The Real Property would be marketed and sold by a bankruptcy trustee. It is likely that a sale of the Real Property in bankruptcy would realize less than the fair market value of the Real Property. Conversion and liquidation under Chapter 7 of the Bankruptcy Code would result in the appointment of a Chapter 7 trustee and the liquidation of assets. As stated above, assets disposed of by "liquidation" or "fire" sale generally generate significantly less proceeds than assets that are marketed and sold as a going concern. Additionally, a Chapter 7 trustee would incur trustee's fees pursuant to § 326(a) or § 330 of the Bankruptcy Code.[1]

The proposed Plan contemplates payment on better terms than any recovery under liquidation.

---

[1] 11 USC § 326(a) states that a Chapter 7 trustee would incur trustee's fees equal to 25% of the first $5,000 of Liquidation Value of Assets; 10% of amount in excess of $5,000 but not in excess of $50,000 of Liquidation Value of Assets; 5% of any amount in excess of $50,000 but not in excess of $1,000,000; 3% of any amount in excess of $1,000,000 of the Liquidation Value of Asset, and commissions for auctioneers for personal property generally is equivalent to ten (10%) percent of the gross sales price and commissions for real property brokers is generally six percent (6%) of the gross sales price. In addition, the attorney for the Chapter 7 trustee would incur attorney's fees as would the current Chapter 11 attorneys.

9. **Procedures for Treating and Resolving Disputed Claims**

    a. **Objection To Claims**

The Plan provides that Debtor shall be entitled to object to Claims, provided, however, that Debtor shall not be entitled to object to Claims that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date.

    b. **No Distributions Pending Allowance**

Except as otherwise provided in the Plan, no Distributions will be made with respect to any portion of a Claim where an objection to such Claim has been filed, until any such objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

    c. **Estimation of Claims**

Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to the Bankruptcy Code regardless of whether Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.

    d. **Resolution of Claims Objections**

On and after the Effective Date, Debtor shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

10. **Conditions Precedent to the Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 11.2 of the Plan.

        (a)    The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not be stayed.

(b)     All documents and agreements to be executed on the Effective Date or otherwise necessary to implement the Plan shall be in form and substance that is acceptable to Debtor, in its reasonable discretion.

(c)     Debtor shall have received any authorization, consent, regulatory approval, ruling, letter, opinion, or document that may be necessary to implement this Plan and that is required by law, regulation, or order.

Under the Plan, each of the conditions set forth above may be waived, in whole or in part, by Debtor without any notice to any other parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by Debtor in its sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by Debtor in its sole discretion). The failure of Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## 11. Certain Effects of Confirmation

### a. Vesting of Debtor's Assets

Except as otherwise explicitly provided in the Plan, upon the Court's entry of the Confirmation Order, all property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in Debtor free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security holders, except as specifically provided in the Plan. As of the Confirmation Date, Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

### b. Discharge of Debtor

Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in the Confirmation Order, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims and Causes of Action against Debtor, whether known or unknown, including any and all liabilities of Debtor, Liens on Debtor's assets, obligations of Debtor, rights against Debtor, and Interests in Debtor or its Estate that arose prior to the Effective Date regardless of whether a claimant accepted or rejected the Plan.

### c. Setoffs

Debtor may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that Debtor may have against such Holder; but neither the failure to do so nor

the allowance of any Claim hereunder shall constitute a waiver or release by Debtor of any such claim that Debtor may have against such Holder.

### d.  Exculpation and Limitation of Liability

Under the Plan, Debtor's current and/or post-Filing Date and pre-Effective Date members, officers, directors, employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns, shall not have or incur, and shall be released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the negotiation and filing of the Plan, the filing of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan, except for their willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  No Holder of any Claim or Interest, or other party in interest, none of their respective agents, employees, representatives, financial advisors, or Affiliates, and no successors or assigns of the foregoing, shall have any right of action against the parties listed in this provision for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan.  Fees and expenses which Debtor owes to its Professionals are excluded from this Exculpation.

### E.  Injunction.

**Upon entry of a Confirmation Order in this case, except as provided for in this Plan, the Confirmation Order shall act as a permanent injunction against any Person: (a) commencing or continuing any action, (b) employing any process, or (c) act to collect, offset, or recover any Claim or Cause of Action against: (1) Debtor, or (2) against any property of Debtor. Such injunction shall survive the closure of the Bankruptcy Case and this Court shall retain jurisdiction to enforce such injunction.**

### F.  Miscellaneous Plan Provisions

#### i.  Modification of Plan

Debtor shall be allowed to modify the Plan pursuant to section 1127 of the Bankruptcy Code to the extent applicable law permits.  Subject to the limitations contained in the Plan, pursuant to Article 13.1 of the Plan, Debtor may modify the Plan, before or after confirmation, without notice or hearing, or after such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the Modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto.  In the event of any modification on or before confirmation, any votes to accept or reject the Plan shall be deemed to be votes to accept or reject the Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely

affects the rights of parties in interest which have cast said votes. Debtor reserves the right in accordance with section 1127 of the Bankruptcy Code to modify the Plan at any time before the Confirmation Date.

    ii.  **Retention of Jurisdiction**

        The Plan provides that subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

(a)    To adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established in the Plan;

(b)    To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated claim, to establish the amount of any reserve required to be withheld from any distribution under the Plan on account of any disputed, contingent or unliquidated claim;

(c)    To resolve all matters related to the rejection, assumption and/or assignment of any Executory Contract or Unexpired Lease of Debtor;

(d)    To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by Debtor;

(e)    To hear and rule upon all applications for Professional Compensation;

(f)    To remedy any defect or omission or reconcile any inconsistency in the Plan, as may be necessary to carry out the intent and purpose of the Plan;

(g)    To construe or interpret any provisions in the Plan and to issue such orders as may be necessary for the implementation, execution and consummation of the Plan, to the extent authorized by the Bankruptcy Code;

(h)    To adjudicate controversies arising out of the administration of the Estate or the implementation of the Plan;

(i)    To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of the Plan, including the Distribution of funds from the Estate and the payment of claims;

(j)    To determine any suit or proceeding brought by Debtor to recover property under any provisions of the Bankruptcy Code;

(k)    To hear and determine any tax disputes concerning Debtor and to determine and declare any tax effects under the Plan;

(l)    To determine such other matters as may be provided for in the Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

(m)    To determine any controversies, actions or disputes that may arise under the provisions of the Plan, or the rights, duties or obligations of any Person under the provisions of the Plan;

(n)    To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which Debtor sold any of its assets during the Bankruptcy Cases; and

(o)    To enter a final decree.

(p)    To enforce and interpret any order or injunctions entered in this Bankruptcy Case.

### iii.  Distributions

(a)    <u>Disbursing Agent</u>.  Unless otherwise provided for herein, all Distributions under this Plan shall be made by Debtor or its agent.

(b)    <u>Distributions of Cash</u>.  Any Distribution of Cash made by Debtor pursuant to this Plan shall, at Debtor's option, be made by check drawn on a domestic bank or by wire transfer from a domestic bank or in any other form of cash or cash equivalent.

(c)    <u>No Interest on Claims or Interests</u>.  Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a post Confirmation agreement in writing between the Debtor and a Holder, postpetition interest shall not accrue or be paid on Claims, and no Holder shall be entitled to interest accruing on or after the Filing Date on any Claim.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final determination is made when and if such Disputed Claim becomes an Allowed Claim.

(d)    <u>Delivery of Distributions</u>.  The Distribution to a Holder of an Allowed Claim shall be made by Debtor (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtor has not received a written notice of a

change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records.  If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until Debtor is notified by such Holder in writing of such Holder's then-current address, at which time Debtor shall recommence Distributions to such Holder without interest but further provided that (i) any distributions not claimed within 6 months of return shall be irrevocably retained by Debtor and (ii) such Holder shall waive its right to such Distributions.   All Distributions returned to Debtor and not claimed within six (6) months of return shall be irrevocably retained by Debtor notwithstanding any federal or state escheat laws to the contrary.

If any Distribution on an Unsecured Claim ("Unsecured Distribution") is tendered by Debtor to a Holder of an Unsecured Claim and returned, refused or otherwise improperly returned or refused ("Unsecured Distribution Refusal"), Debtor shall not be responsible for making any further Unsecured Distribution on account of such Unsecured Claim. Accordingly, in the event of an Unsecured Distribution Refusal, Debtor shall be relieved of any obligation to make said payment or Distribution and Debtor is relieved of any obligation to make further payments or Distributions on such Unsecured Claim under the Plan.

If any Distribution on a Secured Claim or Priority Claim ("Secured or Priority Distribution") is tendered by Debtor to a Holder of a Secured Claim or Priority Claim and returned, refused or otherwise improperly returned or refused ("Secured or Priority Distribution Refusal"), the Holder of such Secured Claim or Priority Claim, as applicable, shall be deemed to have waived its right to such tendered payment or Distribution and such tendered payment or Distribution shall be deemed satisfied.  In the event of a Secured or Priority Distribution Refusal, any obligation of Debtor to make any additional or further payment on such Secured Claim or Priority Claim shall be tolled until such time as: (i) notice is provided to Debtor that the Holder of such Secured Claim or Priority Claim seeks to receive payments from Debtor on the Secured Claim or Priority Claim or otherwise seeks to enforce Debtor's obligations under the Plan or otherwise enforce the Secured Claim or Priority Claim and (ii) any dispute regarding the Secured or Priority Distribution Refusal and its implications is resolved by agreement of the parties or the Bankruptcy Court (the "Tolling Period").   Only in the event of such notice to Debtor shall Debtor's obligations to perform as to the applicable Secured Claim or Priority Claim resume.  The Tolling Period shall: (i) extend the term of the payments on such Secured Claim or Priority Claim and (ii) bar any interest from accruing on the Secured Claim or Priority Claim until such time as any dispute regarding the Secured or Priority Distribution Refusal shall be resolved by a final order of the court.  Notwithstanding anything in the

Plan or otherwise to the contrary, no provision allowing the imposition of late fees, default interest, late charges, damages, or costs and fees against the Debtor or the Debtor's property shall be applicable during the Tolling Period or any period during which a dispute regarding a Tolling Period is being resolved.  For purposes of clarification, Debtor shall not be required to make any lump sum cure of payments or Distributions which would have otherwise come due during the Tolling Period or any period during which a dispute regarding a Tolling Period is unresolved, and Debtor shall recommence Distributions upon the resolution of such on the terms in the Plan as tolled.

(e)     <u>Distributions to Holders as of the Record Date</u>.  All Distributions on Allowed Claims shall be made to the Record Holders of such Claims.  As of the close of business on the Record Date, the Claims register maintained by the Bankruptcy Court shall be closed, and there shall be no further change in the Record Holder of any Claim.  Debtor shall have no obligation to recognize any transfer of any Claim occurring after the Record Date.  Debtor shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Record Date.

(f)     <u>Fractional Dollars</u>.  Any other provision of this Plan notwithstanding, the Debtor shall not be required to make Distributions or payments of fractions of dollars.  Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, at Debtor's option the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

(g)     <u>Withholding Taxes</u>.  Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements.

## 12. Confirmation and Consummation Procedure

### a.  General Information

All creditors whose Claims are Impaired by the Plan may cast their votes for or against the Plan.  As a condition to confirmation of the Plan, the Bankruptcy Code requires that one Class of Impaired Claims votes to accept the Plan.  Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a Class of Impaired Claims as acceptance by holders of at least two-thirds of the dollar amount of the class <u>and</u> by more than one-half in number of Claims. Holders of Claims who fail to vote are not counted as either accepting or rejecting a plan. Voting is accomplished by completing, dating, signing and filing the ballot form (the "Ballot") by the Voting Deadline.  Ballots will be distributed to all creditors entitled to vote on the Plan and is part of the Solicitation Package accompanying the Disclosure Statement.  The Ballot

indicates (i) where the Ballot is to be filed and (ii) the deadline by which creditors must file their Ballots.

In accordance with Article 2.3 of the Plan, unless otherwise specifically provided in a class under the Plan, in the event of a default by Debtor in payments under the Plan or otherwise, the Holder must send written notice ("Default Notice") to Debtor at the addresses of record for Debtor as reflected on the docket for this Bankruptcy Case, unless Debtor has provided the Holder with a written notice of a change of address. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that Debtor has ten (10) days (in the case of a monetary default) and thirty (30) days (in the case of a non-monetary default) from receipt by Debtor and Debtor's counsel of the Default Notice (or the following business day if the 10th or 30th day does not fall on a business day) to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default). The Holder must send such Default Notice to Debtor via certified mail or recognized overnight carrier with a copy via email or fax and certified mail to Cameron M. McCord (Jones & Walden, LLC) at the address reflected in the then current directory of the State of Bar of Georgia. Debtor shall have ten (10) days or thirty (30) days (as applicable) from Debtor's and Debtor's counsel's receipt of the Default Notice to cure such default. Receipt by Debtor's Attorney shall not be deemed receipt by Debtor of the required Default Notice. Notwithstanding anything to the contrary in the Plan or otherwise, a default under one Class of Claims or sub-class of Claims shall not constitute a default under any other Class of Claims or sub-class of Claims. (For example, a default under Class 4 shall not constitute a default under Class 1).

In accordance with Article 2.4 of the Plan, all notices under the Plan shall be in writing. Unless otherwise specifically provided here in, all notices shall be sent to Debtor via U.S. Certified Mail Return Receipt or by recognized overnight carrier to the address of record for Debtor in this Case, unless Debtor has provided such Holder with written notice of change of address for Debtor, with a copy via email or fax and certified mail Cameron M. McCord at the address reflected in the then current directory of the State Bar of Georgia. Receipt of notice by Cameron M. McCord (Jones & Walden, LLC) shall not be deemed receipt by Debtor of the required notice. Notice to creditors may be provided (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtor after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtor has not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records. Notices shall be deemed received: (i) on the day transmitted if sent via fax or email and (ii) on the day delivered if sent via nationally recognized overnight delivery service or Certified Mail Return Receipt.

b. **Solicitation of Acceptances**

This Disclosure Statement has been approved by the Court as containing "adequate information" to permit creditors and equity interest holders to make an informed decision whether to accept or reject the Plan.

c.  **Acceptances Necessary to Confirm the Plan**

At the Confirmation Hearing, the Court shall determine, among other things, whether the Plan has been accepted by Debtor's creditors.  Impaired classes will be deemed to accept the Plan if at least two-thirds in amount and more than one-half in number of the Claims in each class vote to accept the Plan. Furthermore, in such event, unless there is unanimous acceptance of the Plan by the impaired classes, the Court must also determine that any non-accepting Class will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such Class would receive or retain if Debtor were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

d.  **Confirmation of Plan Pursuant to Section 1129(b)**

The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all Impaired classes.  To confirm the Plan without the requisite number of acceptances of each Impaired Class, the Court must find that at least one Impaired Class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to any Impaired Class that does not accept the Plan. Accordingly, if any Impaired Class does not vote to accept the Plan, Debtor will seek to confirm the Plan under the "cramdown" provisions of section 1129(b) of the Bankruptcy Code.

e.  **Considerations Relevant to Acceptance of the Plan**

Debtor's recommendation that all Creditors should vote to accept the Plan is premised upon Debtor's view that the Plan is preferable to other alternatives for reorganization or liquidation of Debtor's estate.  It appears unlikely to Debtor that an alternate plan of reorganization or liquidation can be proposed that would provide for payments in an amount equal or greater than the amounts proposed under the Plan.  If the Plan is not accepted, it is likely that the interests of all creditors will be further diminished.

**Disclaimer**

*This Disclosure Statement contains summaries of certain provisions of the Plan, statutory provisions, documents related to the Plan, events in Debtor's Chapter 11 case, and financial information.  Although Debtor believes that the Plan and related document summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents or statutory provisions.  Factual information contained in this Disclosure Statement has been provided by Debtor's management, except where otherwise specifically noted.  Debtor is unable to warrant or represent that the information contained herein, including the financial information, is without any inaccuracy or omission.  The financial data set forth herein, except as otherwise specifically noted, has not been subjected to an independent audit.*

*Nothing contained herein shall (1) constitute an admission of any fact or liability by any party, (2) be admissible in any nonbankruptcy proceeding involving Debtor or any other party; provided, however, that in the event Debtor defaults under the Plan, the Disclosure Statement may be admissible in a proceeding relating to such default for the purpose of establishing the*

*existence of such default, or (3) be deemed conclusive advice on the tax or other legal effects of Debtor's Plan as to holders of Claims or Interests. You should consult your personal counsel or tax advisor on any questions or concerns regarding tax or other legal consequences of the Plan.*

*Except for historical information, all the statements, expectations, and assumptions, including expectations and assumptions contained in this Disclosure Statement, involve a number of risks and uncertainties. Although Debtor has used its best efforts to be accurate in making these statements, it is possible that the assumptions made by Debtor may not materialize. In addition, other important factors could affect the prospect of recovery to Creditors including, but not limited to, the inherent risks of litigation and the amount of Allowed Claims.*

*All Creditors and Interest Holders are advised and encouraged to read this Disclosure Statement and the Plan in their entirety. Plan summaries and statements made in this Disclosure Statement are qualified in their entirety by reference to the Plan, any exhibits, and the Disclosure Statement as a whole.*

*This Disclosure Statement has been prepared in accordance with § 1125 of the Bankruptcy Code and Rule 3016(c) of the Federal Rules of Bankruptcy Procedure and not in accordance with federal or state securities laws. This Disclosure Statement has neither been approved nor disapproved by the Securities and Exchange Commission ("SEC"), nor has the SEC passed on the accuracy or adequacy of the statements contained herein. This Disclosure Statement was prepared to provide holders of Claims and Interests in Debtor with "adequate information" (as defined in the Bankruptcy Code) so that they can make an informed judgment about the Plan.*

*As to contested matters, adversary proceedings, and other actions or threatened actions, this Disclosure Statement shall not constitute nor be construed as an admission of any fact or liability, stipulation, or waiver, but rather as a statement made in settlement negotiations.*

*The information contained in this Disclosure Statement is included herein for the purpose of soliciting acceptances of the Plan and may not be relied upon for any purpose other than to make a judgment with respect to, and how to vote on, the Plan.*

**The representations in this Disclosure Statement are those of Debtor. No representations concerning Debtor are authorized other than as set forth in this statement. Any representation or inducement made to secure acceptance of this Plan which are other than as contained in this document should not be relied upon by any Person. The information contained herein has not been subject to a certified audit. Every effort, however, has been made to provide adequate financial information in this Disclosure Statement. The representations by Debtor are not warranted or represent to be without any inaccuracy, although every effort has been made to be accurate. Neither the Plan nor this Disclosure Statement has been designed to forecast consequences which follow from a general rejection of this Plan, although an attempt is made to state the consequences of a liquidation of Debtor.**

Respectfully submitted this 11th  day of November, 2020

**Areu Studios, LLC**


/s/ *Ozzie Areu*
By: Ozzie Areu, Manager

**JONES & WALDEN, LLC**

*/s/ Cameron M. McCord*
Cameron M. McCord
Georgia Bar No. 143065
699 Piedmont Avenue, NE
Atlanta, Georgia 30308
(404) 564-9300
Proposed Attorneys for Debtor in Possession