Deed Book 62468 Page 580
Filed and Recorded 10/20/2020 3:20:00 PM
2020-0323999
Georgia Intangible Tax Paid $900.00
Cathelene Robinson
Clerk of Superior Court
Fulton County, GA
Participant IDs: 4582573621

**RETURN DOCUMENTS TO:**
**The Fryer Law Firm, P.C.**
**70 Lenox Pointe**
**Atlanta, GA 30324**
**Tax parcel ID# 140228-LL-051-1**

### DEED TO SECURE DEBT
### AND
### SECURITY AGREEMENT

**STATE OF GEORGIA**
**COUNTY OF FULTON**

THIS INDENTURE, made as of this 1st day of October, 2020 between

Good Deed 317, LLC, a Delaware limited liability company

whose address is 3621 Herren Drive, Smyrna, GA 30082 ("Grantor"), and

TP Krog, LLC, a Georgia limited liability company

whose address is 541 Tenth Street, Box 172, Atlanta. GA 30318 ("Grantee").

**WITNESSETH:**

That, WHEREAS, Grantor is justly indebted to Grantee in the amount of THREE HUNDRED THOUSAND AND NO/100 DOLLARS ($300,000.00), in lawful money of the United States, and has agreed to pay the same, with interest thereon, according to the terms of a certain note (the "Note") given by Grantor and Ozzie Areu to Grantee, bearing even date herewith, with payment due on October 31, 2020, the Note, by reference, being made a part hereof;

NOW, THEREFORE, in consideration of the premises and of the sum hereinabove set forth, Grantor has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell and convey unto Grantee the following property, to-wit:

### SEE EXHIBIT "A"

It is the intention of the parties to create a perpetual or indefinite security interest in the real property described herein pursuant to O.C.G.A. Section 44-14-80(a)(2) and agree that title shall not revert to the Grantor herein for a period of 20 years from the date of this conveyance.

**TOGETHER** with all buildings, structures and other improvements now or hereafter located on the property hereinbefore described, or any part and parcel thereof; and

**TOGETHER** with all rights, title and interest of Grantor in and to the minerals, flowers, shrubs, crops, trees, timber and other emblements now or hereafter on said property or above the same or any part or parcel thereof; and

1

Deed Book 62468 Page 581

**TOGETHER** with all and singular the tenements, hereditaments, easements and appurtenances thereunto belonging or in any wise appertaining, and the reversion or reversions, remainder and remainders, rents, issues and profits thereof; and also all the estate, right, title, interest; claim and demand whatsoever of Grantor of, in and to the same and of, in and to every part and parcel thereof; and

**TOGETHER** with all machinery, apparatus, equipment, fittings, fixtures, whether actually or constructively attached to said property and including all trade, domestic and ornamental fixtures, and articles of personal property of every kind and nature whatsoever (hereinafter collectively called "Equipment"), now or hereafter located in, upon or under said property or any part thereof and used or usable in connection with any present or future operation of said property and now owned or hereafter acquired by Grantor, including, but without limiting the generality of the foregoing, all heating, air-conditioning, freezing, lighting, laundry, incinerating and power equipment; engines; pipes; pumps; tanks; motors; conduits; switchboards; plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating and communications apparatus; boilers, ranges, furnaces, oil burners or units thereof; appliances; air-cooling and air-conditioning apparatus; vacuum cleaning systems; elevators; escalators; shades; awnings; screens; storm doors and windows; stoves; wall beds; refrigerators; attached cabinets; partitions; ducts and compressors; rugs and carpets; draperies; furniture and furnishings therein; together with all building materials and equipment now or hereafter delivered to the premises and intended to be installed therein; together with all additions thereto and replacements thereof (Grantor hereby agreeing with respect to all additions and replacements to execute and deliver from time to time such further instruments as may be requested by Grantee to confirm the conveyance, transfer and assignments of any of the foregoing); and

**TOGETHER** with any and all rents which are now due or may hereafter become due by reason of the renting, leasing and bailment of property improvements thereon and Equipment; and

**TOGETHER** with any and all awards or payments, including interest thereon, and the right to receive the same, as a result of (a) the exercise of the right of eminent domain, (b) the alteration of the grade of any street, or (c) any other injury to, taking of, or decrease in the value of, the premises, to the extent of all amounts which may be secured by this deed at the date of receipt of any such award or payment by Grantee and of the reasonable attorney's fees, costs and disbursements incurred by Grantee in connection with the collection of such award or payment.

**TO HAVE AND TO HOLD** all the aforesaid property, property rights, contract rights, Equipment and claims (all of which are collectively referred to herein as the "Premises") to the use, benefit and behoof of the Grantee, forever, in **Fee Simple.**

Grantor warrants that Grantor has good title to the Premises, and is lawfully seized and possessed of the Premises and every part thereof, and has the right to convey same; that the Premises are unencumbered except as may be herein expressly provided; and that Grantor will forever warrant and defend the title to the Premises unto Grantee against the claims of all persons whomsoever.

This instrument is a deed and security agreement passing legal title pursuant to the laws of the State of Georgia governing loan or security deed and security agreements and is not a mortgage; and is made and intended to secure the payment of the indebtedness of Grantor to Grantee evidenced by the Note in accordance with the terms thereof, together with any and all other indebtedness now owing or which may hereafter be owing by Grantor to Grantee, however incurred, including advances by Grantee or any transferee of Grantee for the purpose of paying taxes or premiums on insurance on the Premises or to repair, maintain or improve the Premises (whether or not Grantor is at that time the owner of the Premises), and all renewal or renewals and extension or extensions and modification or modifications and consolidation or consolidations of the Note or other indebtedness, either in whole or in part (all of which are collectively referred to herein as the "Secured Indebtedness").

1. Grantor shall pay to Grantee the Secured Indebtedness with interest thereon as in the Note and this deed provided.

2. Grantor shall pay, when due and payable, (a) all taxes, assessments, general or special, and other charges levied on, or assessed, placed or made against the Premises, this instrument or the Secured Indebtedness or any interest of the Grantee in the Premises or the obligations secured hereby, providing Grantee with a copy of the annual tax bill and proof of payment no later than ten days prior to the due date; (b) premiums on policies of fire and other hazard insurance covering the Premises, as required in Article 3 herein; (c) premiums on all collaterally pledged life insurance policies, if any; (d) premiums for mortgage insurance, if this deed and the Note are so insured; and (e) ground rents or other lease rentals, if any; payable by Grantor,

Grantor shall promptly deliver to Grantee receipts showing payment in full of all of the above items. Upon notification from Grantee, Grantor shall pay to Grantee, together with and in addition to the payments of principal and interest payable under the terms of the Note secured hereby, on the installment-paying dates of the Note, until said Note is fully paid or until notification from Grantee to the contrary, an amount reasonably sufficient (as estimated by Grantee) to provide Grantee with funds to pay said taxes, assessments, insurance premiums, rents and other charges next due so that Grantee will have sufficient funds on hand to pay same thirty (30) days before the date on which they become past due. In no event shall Grantee be liable for any interest on any amount paid to it as herein required, and the money so received may be held and commingled with its own funds, pending payment or application thereof as herein provided. Grantor shall furnish to Grantee, at least thirty (30) days before the date on which the same will become past due, an official statement of the amount of said taxes assessments, insurance premiums and rents next due, and Grantee shall pay said charges to the amount of the then unused credit therefor as and when they become severally due and payable. An official receipt therefor shall be conclusive evidence of such payment and of the validity of such charges. Grantee may, at its option, pay any of these charges when payable, either before or after they become past due, without notice, or make advances therefor in excess of the then amount of credit for said charges. The excess amount advanced shall become part of the Secured Indebtedness and bear interest at the rate of interest provided in the Note from date of advancement. Grantee may apply credits held by it for the above charges, or any part thereof, on account of any delinquent installments of principal or interest or any other payments maturing or due under this instrument and the amount of credit existing at any time shall be reduced by the amount thereof paid or applied as herein provided. The amount of the existing credit hereunder at the time of any transfer of the Premises shall, without assignment thereof, inure to the benefit of the successor-owner of the Premises and shall be applied under and subject to all of the provisions hereof. Upon payment in full of the Secured Indebtedness, the amount of any unused credit shall be paid over to the person entitled to receive it.

3.      (a) Grantor shall keep the Premises insured for the benefit of Grantee against loss or damage by fire, lightning, windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles and smoke and such other hazards as Grantee may from time to time require, all in amounts approved by Grantee not exceeding 100% of full insurable value; all insurance herein provided for shall be in form and companies approved by Grantee; and, regardless of the types or amounts of insurance required and approved by Grantee, Grantor shall assign and deliver to Grantee, as collateral and further security for the payment of the Secured Indebtedness, all policies of insurance which insure against any loss or damage to the Premises, with loss payable to Grantee, without contribution by Grantee, pursuant to the New York Standard or other mortgagee clause satisfactory to Grantee. If Grantee, by reason of such insurance, receives any money for loss or damage, such amount may, at the option of Grantee, be retained and applied by Grantee toward payment of the Secured Indebtedness, or be paid over, wholly or in part, to Grantor for the repair or replacement of the Premises or any part thereof, or for any other purpose or object satisfactory to Grantee, but Grantee shall not be obliged to see to the proper application of any amount paid over to Grantor.

(b) Not less than 10 days prior to the expiration date of each policy of insurance required of Grantor pursuant to this Article, and of each policy of insurance held as additional collateral to secure Secured Indebtedness, Grantor shall deliver to Grantee a certificate of insurance for the then current year,  showing Grantee as sole loss payee, and reflecting that the premium has been paid for the following twelve months.

(c) In the event of a foreclosure of this deed, the purchaser of the Premises shall succeed to all the rights of Grantor, including any right to unearned premiums, in and to all policies of insurance assigned and delivered to Grantee, with respect to all property conveyed and to be conveyed by this deed, pursuant to the provisions of this Article.

4. Grantor shall maintain the Premises in good condition and repair, shall not commit or suffer any waste to the Premises, and shall comply with, or cause to be complied with, all restrictive covenants, statutes, ordinances and requirements of any governmental authority relating to the Premises and the use thereof or any part thereof. Grantor shall promptly repair, restore, replace or rebuild any part of the Premises, now or hereafter encumbered by this deed, which may be affected by any proceeding of the character referred to in Article 6 herein. No part of the Premises, including, but not limited to, any building, structure, parking lot, driveway, landscape scheme, timber or other ground improvement, equipment or other property, now or hereafter conveyed as security by or pursuant to this deed, shall be removed, demolished or materially altered without the prior written consent of Grantee. Grantor shall complete, within a reasonable time, and pay for any building, structure or other improvement at any time in the process of construction on the property herein conveyed. Grantor shall not initiate, join in or consent to any change in any private restrictive covenant, zoning

3

ordinance or other public or private restrictions limiting or defining the uses which may be made of the Premises or any part thereof. Grantee and any persons authorized by Grantee shall have the right to enter and inspect the Premises at all reasonable times and access thereto shall be permitted for that purpose.

5. Grantor shall execute and deliver (and pay the costs of preparation and recording thereof) to Grantee and to any subsequent holder from time to time, upon demand, any further instruments or instruments, including, but not limited to, security deeds, security agreements, financing statements, assignments and renewal and substitution notes, so as to reaffirm, to correct and to perfect the evidence of the obligation hereby secured and the legal security title of Grantee to all or any part of the Premises intended to be hereby conveyed, whether now conveyed, later substituted for, or acquired subsequent to the date of this Deed and extensions or modifications thereof. Grantor, upon request, made either personally or by mail, shall certify by a writing, duly acknowledged, to Grantee or to any proposed assignee of this deed, the amount of principal and interest then owing on the Secured Indebtedness and whether or not any offsets or defenses exist against the Secured Indebtedness, within 6 days in case the request is made personally, or within 10 days after the mailing of such request is made by mail.

6. Notwithstanding any taking of any property, herein conveyed and agreed to be conveyed, by eminent domain, alteration of the grade of any street or other injury to, or decrease in value of, the Premises by any public or quasi-public authority or corporation, Grantor shall continue to pay principal and interest on the Secured Indebtedness, and any reduction in the Secured Indebtedness resulting from the application by Grantee of any award or payment for such taking, alterations, injury or decrease in value of the Premises, as hereinafter set forth, shall be deemed to take effect only on the date of such receipt; and said award or payment may, at the option of Grantee, be retained and applied by Grantee toward payment of the Secured Indebtedness, or be paid over, wholly or in part, to Grantor for the purpose of altering, restoring or rebuilding any part of the Premises which may have been altered, damaged or destroyed as a result of any such taking, alteration of grade, or other injury to the Premises, or for any other purpose or object satisfactory to Grantee, but Grantee shall not be obligated to see to the application of any amount paid over to Grantor. If prior to the receipt by Grantee of such award or payment, the Premises shall have been sold on foreclosure of this deed, Grantee shall have the right to receive said award or payment to the extent of any deficiency found to be due upon such sale, with legal interest thereon, whether or not a deficiency judgment on this deed shall have been sought or recovered or denied, and of the reasonable counsel fees, costs and disbursements incurred by Grantee in connection with the collection of such award or payment.

7. Grantor shall deliver to Grantee, at any time within 30 days after notice and demand by Grantee but not more frequently than once per month, (i) a statement in such reasonable detail as Grantee may request, certified by the Grantor or an executive officer of a corporate Grantor, of the leases relating to the Premises, and (ii) a statement in such reasonable detail as Grantee may request, certified by a certified public accountant or, at the option of Grantee, by the Grantor or an executive officer or treasurer of a corporate Grantor, of the income from and expenses of any one or more of the following: (a) the conduct of any business on the Premises, (b) the operation of the Premises, or (c) the leasing of the Premises or any part thereof, for the last 12 months calendar period prior to the giving of such notice, and, on demand, Grantor shall furnish to Grantee executed counterparts of any such leases at convenient facilities for the audit and verification of any such statement.

8. Each of the following events shall constitute an "Event of Default" under this deed:

(i) should Grantor fail to pay the Secured Indebtedness or any part thereof, when and as the same Shall become due and payable;

(ii) should any warranty or representation of Grantor herein contained, or contained in any instrument, transfer, certificate, statement, conveyance, assignment or loan agreement given with respect to the Secured Indebtedness, prove untrue or misleading in any material aspect:

(iii) should the Premises be subject to actual or threatened waste, or any part thereof be removed, demolished or materially altered so that the value of the Premises be diminished except as provided for in Article 6 herein;

(iv) should any federal tax lien or claim of lien for labor or material be filed of record against Grantor or the Premises and not be removed by payment or bond within 30 days from date of recording;

(v) should any claim of priority to this deed by title, lien or otherwise be asserted in any legal or equitable proceeding;

(vi) should Grantor, if a corporation, be liquidated or dissolved or its charter expire or be revoked, or, if a partnership or business association, be dissolved or partitioned, or, if a trust, be terminated or expire;

4

(vii) should the Grantor make an assignment for the benefit of creditors, file or have filed against Grantor a petition for relief under any chapter of the Bankruptcy Code, or should any custodian, receive, or trustee be appointed for it or any part of its assets or should any proceeding under any bankruptcy, reorganization, arrangements, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect, be commended by or against Grantor;

(viii) should Grantor fail to keep, observe, perform, carry out and execute in every particular the covenants, agreements, obligations and conditions set out in this deed, or in the Note, or in any of the following instruments given with respect to the Secured Indebtedness: loan commitment of Grantee, loan agreement between Grantor and Grantee, or assignment of leases by Grantor; or

(ix) should any event occur under any instrument, deed or agreement, given or made by Grantor to or with any third party, which would authorize the acceleration of any debt to any such third party the acceleration of which would materially affect Grantor's ability to pay when due any amounts owed to Grantee.

9. If an Event of Default occurs and remains uncured ten days after Grantee has given Grantor written notice of the default and the action necessary to cure the same, Grantee may do any one or more of the following:

(i) enter upon and take possession of the Premises without the appointment of a receiver, or an application therefor, employ a managing agent of the Premises and let the same, either in its own name, or in the name of Grantor, and receive the rents, incomes, issues and profits of the Premises and apply the same, after payment of all necessary charges and expenses, on account of the Secured Indebtedness, and Grantor will transfer and assign to Grantee, in form satisfactory to Grantee, Grantor's lessor interest in any lease now or hereafter affecting the whole or any part of the Premises;

(ii) pay any sums in any form or manner deemed expedient by Grantee to protect the security of this instrument or to cure any event of default other than payment of interest or principal on Secured Indebtedness; make any payment hereby authorized to be made according to any bill, statement or estimate furnished or procured from the appropriate public officer or the party claiming payment without inquiry into the accuracy or validity thereof, and the receipt of any such public officer or party in the hands of Grantee shall be conclusive evidence of the validity and amount of items so paid, in which event the amounts so paid, with interest thereon from the date of such payment at the rate of interest stated in the Note shall be added to and become a part of the Secured Indebtedness and be immediately due and payable to Grantee; and Grantee shall be subrogated to any encumbrance, lien, claim or demand, and to all the rights and securities for the payment thereof, paid or discharged with the principal sum secured hereby or by Grantee under the provisions hereof, and any such subrogation rights shall be additional and cumulative security to this instrument;(iii) declare the entire Secured Indebtedness immediately due, payable and collectible, without notice to Grantor, regardless of maturity, and, in that event, the entire Secured Indebtedness shall become immediately due, payable and collectible; and thereupon, Grantee may sell and dispose of the Premises at public auction, at the usual place for conducting sales at the courthouse in the county where the Premises or any part thereof may be, to the highest bidder for cash, first advertising the time, terms and place of such sale by publishing a notice thereof once a week for four consecutive weeks without regard to the actual number of days in a newspaper in which sheriff's advertisements are published in said county, and after giving such other notice required by law; and Grantee may thereupon execute and deliver to the purchaser at said sale a sufficient conveyance of the Premises in fee simple, which conveyance may contain recitals as to the happening of the default upon which the execution of the power of sale, herein granted, depends, and said recitals shall be presumptive evidence that all preliminary acts prerequisite to said sale and deed were in all things duly complied with; and Grantee its agents, representatives, successors or assigns, may bid and purchase at such sale; and Grantor hereby constitutes and appoints Grantee or its assigns agent and attorney in fact to make such recitals, sale and conveyance, and all of the acts of such attorney in fact are hereby ratified, and Grantor agrees that such recitals shall be binding and conclusive upon Grantor and that the conveyance to be made by Grantee, or its assigns, (and in the event of a deed in lieu of foreclosure, then as to such conveyance) shall be effectual to bar all right, title and interest, equity of redemption, including all statutory redemption, homestead, dower, curtesy and all other exemptions of Grantor, or its successors in interest, in and to said Premises; and Grantee, or its assigns, shall collect the proceeds of such sale, reserving therefrom all unpaid Secured Indebtedness with interest then due thereon, and all amounts advanced by Grantee for taxes, assessments, fire insurance premiums and other charges, with interest at the rate of interest stated in the Note thereon from date of payment, together with all costs and charges for advertising, and commissions for selling the Premises, and reasonable attorney's fees, and pay over any surplus to Grantor (in the event of deficiency Grantor shall immediately on demand from Grantee pay over

5

to Grantee, or its nominee, such deficiency); and Grantor agrees that possession of the Premises during the existence of the Secured Indebtedness by Grantor, or any person claiming under Grantor, shall be that of tenant under Grantee, or its assigns, and, in case of a sale, as herein provided, Grantor or any person in possession under Grantor shall then become and be tenants holding over, and shall forthwith deliver possession to the purchaser at such sale, or be summarily dispossessed in accordance with the provisions of law applicable to tenants holding over; the power and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and are in addition to any and all other remedies which Grantee may have at law or in equity.

Grantee, in any action to foreclose this deed, or upon any event of default, shall be at liberty to apply for the appointment of a receiver of the rents and profits or of the Premises or both without notice, and shall be entitled to the appointment of such a receiver as a matter of right, without consideration of the value of the Premises as security for the amounts due the Grantee, or the solvency of any person or corporation liable for the payment of such amounts.

In case of any sale under this deed by virtue of the exercise of the power herein granted, or pursuant to any order in any judicial proceedings or otherwise, at the election of Grantee the Premises or any part thereof may be sold in one parcel and as an entirety, or in such parcels, manner or order as Grantee in its sole discretion may elect, and one or more exercises of the powers herein granted shall not extinguish or exhaust the power unless the entire Premises are sold or the Secured Indebtedness paid in full.

10. Grantor, for himself and family, hereby waives and renounces all homestead exemption rights provided for by the Constitution and Laws of the United States or the State of Georgia, in and to the Premises as against the collection of the Secured Indebtedness, or any part thereof; and Grantor agrees that where, by the terms of the conveyance or the Note secured thereby, a day is named or a time fixed for the payment of any sum of money or the performance of any agreement, the time stated enters into the consideration and is of the essence of the whole contract.

11. If all or any part of the Premises is sold, conveyed or otherwise transferred without obtaining the prior written consent of Grantee, Grantee may declare the entire Secured Indebtedness immediately due and payable except as prohibited by law. Grantee may, in its sole discretion, consent to such sale or transfer. Should Grantee consent to such sale or transfer, it will be deemed to have waived its right to accelerate the Secured Indebtedness only if prior to such sale or transfer (a) Grantee determines that the credit of any purchaser or transferee is satisfactory; (b) the purchaser or transferee agrees to pay interest on the amount owed to Grantee under the Note and under this Deed to Secure Debt at whatever rate Grantee requires; (c) the purchaser or transferee executes an assumption agreement that is acceptable to Grantee that obligates the purchaser or transferee to keep all the promises and agreements made in the Note and in this Deed to Secure Debt whether according to their original terms or as amended pursuant to the assumption agreement; and (d) the purchaser or transferee pays the transfer fee required by Grantee. The foregoing provisions will apply to each and every sale and transfer whether or not the Grantee has consented to any previous sale or transfer.

12. Grantee shall have the right from time to time to sue for any sums, whether interest, principal or any installment of either or both, taxes, penalties, or any other sums required to be paid under the terms of this deed, as the same become due, without regard to whether or not all of the Secured Indebtedness shall be due on demand, and without prejudice to the right of Grantee thereafter to enforce any appropriate remedy against the Grantor, including an action of foreclosure, or any other action, for a default or defaults by Grantor existing at the time such earlier action was commenced.

13. The rights of Grantee, granted and arising under the clauses and covenants contained in this deed and the Note, shall be separate, distinct and cumulative of other powers and rights herein granted and all other rights which Grantee may have in law or equity, and none of them shall be in exclusion of the others; and all of them are cumulative to the remedies for collection of indebtedness, enforcement of rights under security deeds, and preservation of security as provided at law. No act of Grantee shall be construed as a election to proceed under any one provision herein or under the Note to the exclusion of any other provision, or an election of remedies to the bar of any other remedy allowed at law or in equity, anything herein or otherwise to the contrary notwithstanding.

14. Every provision for notice and demand or request shall be deemed fulfilled by written notice and demand or request personally served on one or more of the persons who shall at the time hold the record title to the Premises, or on their heirs or successors, or mailed by depositing it in any post office station or letter box, enclosed in a postpaid envelope (a) addressed to such person or persons, or their heirs or successors, at his,

6

14. Every provision for notice and demand or request shall be deemed fulfilled by written notice and demand or request personally served on one or more of the persons who shall at the time hold the record title to the Premises, or on their heirs or successors, or mailed by depositing it in any post office station or letter box, enclosed in a postpaid envelope (a) addressed to such person or persons, or their heirs or successors, at his, their or its address last known to Grantee or (b) addressed to the street address of the Premises hereby conveyed.

15. Any indulgence or departure at any time by the Grantee from any of the provisions hereof, or of any obligation hereby secured, shall not modify the same or relate to the future or waive future compliance therewith by the Grantor.

16. The words "Grantor" and "Grantee" whenever used herein shall include all individuals, corporations (and if a corporation, its officers, employees, agents or attorneys) and any and all other persons or entities, and the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and all those holding under either of them, and the pronouns used herein shall include, when appropriate, either gender and both singular and plural, and the word "Note" shall also include one or more notes and the grammatical construction of sentences shall conform thereto. If more than one party shall execute this deed, the term "Grantor" shall mean all parties signing, and each of them, and each agreement, obligation and Secured Indebtedness of the Grantor shall be and mean the several as well as joint undertaking of each of them.

**IN WITNESS WHEREOF,** this deed has been duly executed and sealed by Grantor the day and year first above written.

Signed, sealed and delivered in the presence of:

_____
witness

_____
notary public

OFFICIAL SEAL
HARRY S KUNIANSKY
NOTARY PUBLIC – GEORGIA
FULTON COUNTY
My Commission Expires June 11, 2024

Good Deed 317, LLC, a Delaware limited liability company:

_____(SEAL).
by: Ozzie Areu, manager

7

EXHIBIT "A"

PROPERTY DESCRIPTION

The land referred to in this Policy is described as follows:

Tract 1:

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land Lots 228 and 253 of the 14th Land District of Fulton County, Georgia and being more particularly described as follows:

TO FIND THE POINT OF BEGINNING commence at an iron pin located at the intersection of the eastern right-of-way of I-285 (300' right-of-way) and the southern right-of-way of Greenbriar Parkway (70' right-of-way); THENCE northerly along the southern right-of-way of Greenbriar Parkway following a curvature to the left an arc distance of 490.99 feet to an iron pin, said arc subtending a chord bearing N 61 degrees 42 minutes 27 seconds E, a distance of 478.13 feet; THENCE S 49 degrees 46 minutes 29 seconds E, a distance of 123.69 feet to an iron pin; THENCE S 00 degrees 39 minutes 46 seconds E, a distance of 780.60 feet to an iron pin located on the north line of Land Lot 253, which iron pin is the POINT OF BEGINNING; from the POINT OF BEGINNING thus established, THENCE N 89 degrees 10 minutes 34 seconds E along said Land Lot Line, a distance of 244.03 feet to an iron pin located at the common corner of Land Lots 228, 229, 252, and 253; THENCE N 89 degrees 05 minutes 22 seconds E along the north line of Land Lot 228, a distance of 926.96 feet to an iron pin on the western right-of-way of Continental Colony Parkway (70' right-of-way); THENCE S 00 degrees 34 minutes 35 seconds E along the western right-of-way of Continental Colony Parkway, a distance of 933.91 feet to an iron pin; THENCE continuing along said right-of-way following a curvature to the right an arc distance of 218.54 feet to an iron pin, said arc subtending a chord bearing S 18 degrees 48 minutes 04 seconds W, a distance of 214. 0 feet; THENCE continuing along said right-of-way S 38 degrees 10 minutes 43 seconds W, a distance of 176.16 feet to an iron pin; THENCE continuing along said right-of-way following a curvature to the right an arc distance of 93.62 feet to an iron pin, said arc subtending a chord bearing S 42 degrees 38 minutes 11 seconds W, a distance of 93.52 feet; THENCE departing said right-of-way, S 89 degrees 37 minutes 03 seconds W, a distance of 272.38 feet to a point; THENCE N 25 degrees 22 minutes 15 seconds W, a distance of 603.46 feet to a point; THENCE S 61 degrees 08 minutes 46 seconds W, a distance of 188.35 feet to a point; THENCE southwesterly following a curvature to the right an arc distance of 95.83 feet, said arc subtending a chord bearing S 76 degrees 33 minutes 14 seconds W, a distance of 94.40 feet; THENCE continuing along a curvature to the right an arc distance of 219.64 feet to a point, said arc subtending a chord bearing N 57 degrees 56 minutes 32 seconds W, a distance of 203.96 feet; THENCE N 69 degrees 57 minutes 46 seconds E, a distance of 32.61 feet to a point; THENCE N 00 degrees 39 minutes 46 seconds W, a distance of 775.89 feet to an iron pin and the POINT OF BEGINNING. Said tract containing 1,271,768 square feet or 29.196 acres.

TOGETHER WITH all right, title and interest in and to an easement for an energy dissipater which was granted by instrument from Airport Associates, Ltd. to Delta Airlines, Inc., dated May 23, 1979, recorded at Deed Book 6282, Page 386, Records of Fulton County, Georgia.

Tract 2:

All that tract or parcel of land lying and being in Land Lots 228 and 253 of the 14th District, Fulton County, Georgia, being shown on a Boundary Survey for TP Krog, LLC, and First American Title Insurance Company, prepared by McClung Surveying Services, Inc., bearing the seal and certification of Michael R Noles, Georgia Registered Land Surveyor No. 2646, dated May 18, 2011, last revised July 6, 2011, and being more fully described as follows:

Beginning at an iron pin found at the intersection of the northwest right-of-way of Hogan Road (50 foot right-of-way) and the eastern right-of-way of Interstate Highway 285 (300 foot right-of-way), said iron pin being the Point of Beginning; thence from the Point of Beginning, North 08 degrees 35 minutes 42 seconds West along the said easterly right-of-way of Interstate Highway 285 a distance of 1,171.05 feet to a concrete monument found; thence northerly along the said easterly right-of-way of Interstate Highway 285 and following the arc of a curve to the right an arc distance of 372.33 feet (said arc having a radius of 11,205.37 feet, a chord bearing of North 07 degrees 40 minutes 47 seconds West, and a chord distance of 372.31 feet) to a point; thence leaving the said eastern right-of-way of Interstate Highway 285; thence North 86 degrees 03 minutes 20 seconds East a distance of 454.20 feet to a point; thence South 00 degrees 37 minutes 53 seconds East a distance of

ALTA
Exhibit A

371.22 feet to a point; thence South 69 degrees 57 minutes 46 seconds West a distance of 32.61 feet to a point; thence southerly and easterly and following the arc of a curve to the left an arc distance of 219.64 feet (said arc having a radius of 165.79 feet, a chord bearing of South 57 degrees 56 minutes 32 seconds East, and a chord distance of 203.96 feet) to a point; thence northeasterly and following a curve to the left an arc distance of 95.83 feet (said arc having a radius of 159.77 feet, a chord bearing of North 76 degrees 33 minutes 14 seconds East, and a chord distance of 94.40 feet) to a point; thence North 61 degrees 08 minutes 46 seconds East a distance of 188.35 feet to a point; thence South 25 degrees 22 minutes 15 seconds East a distance of 603.46 feet to a point; thence North 89 degrees 36 minutes 14 seconds East a distance of 272.32 feet to a point located on the northwestern right-of-way Continental Colony Parkway (aka Centinental Colony Parkway) (70 foot right-of-way); thence southwesterly along the said northwesterly right-of-way of Continental Colony Parkway and following the arc of a curve to the right an arc distance of 171.60 feet (said arc having a radius of 603.75 feet, a chord bearing of South 55 degrees 16 minutes 26 seconds West, and a chord distance of 171.03 feet) to a point located on the northwestern right-of-way of Stone Hogan Road Connector (70 foot right-of-way); thence South 63 degrees 24 minutes 59 seconds West along the said northwestern right-of-way of Stone Hogan Road Connector a distance of 464.08 feet to a point; thence southwesterly along the said northwesterly right-of-way of Stone Hogan Road Connector and following the arc of a curve to the left an arc distance of 115.88 feet (said arc having a radius of 269.59 feet, a chord bearing of South 51 degrees 07 minutes 02 seconds West, and a chord distance of 114.99 feet) to a point located at the intersection of the said northwestern right-of-way of Stone Hogan Road Connector and the northwestern right-of-way of Hogan Road (50 foot right-of-way); thence southwesterly along the said northwestern right-of-way of Hogan Road the following courses and distances: thence South 59 degrees 38 minutes 46 minutes West a distance of 268.20 feet to a point; thence South 60 degrees 27 minutes 51 seconds West a distance of 78.65 feet to a point; thence South 63 degrees 48 minutes 36 seconds West a distance of 68.03 feet to a point; thence South 69 degrees 05 minutes 20 seconds West a distance of 48.51 feet to a point; thence South 71 degrees 05 minutes 36 seconds West a distance of 117.35 feet to the iron pin found at the intersection of the northwesterly right-of-way of Hogan Road and the easterly right-of-way of Interstate Highway 285 said point being the Point of Beginning.

Said tract or parcel containing 23.725, more or less acres or 1,033,464 more or less square feet.

*****************************

The above-described property being further described on Individual Plat of Survey for Areu Studios, LLC, Ozzie Areu, Good Deed 317, LLC, TP Krog, LLC and First American Title Insurance Company dated November 27, 2018, prepared by Michael R. Noles, GRLS No. 2646, bearing Job No. 249090SN as:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOTS 228 AND 253 OF THE 14TH LAND DISTRICT OF FULTON COUNTY, GEORGIA AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A REBAR FOUND AT THE INTERSECTION OF THE NORTHWEST RIGHT OF WAY OF HOGAN ROAD (50'R/W) AND THE EASTERN RIGHT OF WAY OF INTERSTATE HIGHWAY 285 (300' R/W), SAID REBAR BEING THE POINT OF BEGINNING; THENCE FROM SAID POINT OF BEGINNING AND RUNNING ALONG SAID RIGHT OF WAY OF INTERSTATE 285 NORTH 08 DEGREES 35 MINUTES 42 SECONDS WEST FOR A DISTANCE OF 1,171.05 FEET TO A CONCRETE MONUMENT FOUND; THENCE FOLLOWING ALONG A CURVE TO THE RIGHT SAID CURVE HAVING AN ARC LENGTH OF 372.33 FEET AND A RADIUS OF 11,205.37 FEET AND BEING SUBTENDED BY A CHORD BEARING OF NORTH 07 DEGREES 40 MINUTES 47 SECONDS WEST AND A CHORD DISTANCE OF 372.31 FEET TO A REBAR SET; THENCE LEAVING SAID RIGHT OF WAY LINE AND RUNNING NORTH 86 DEGREES 03 MINUTES 20 SECONDS EAST FOR A DISTANCE OF 454.20 FEET TO A REBAR SET; THENCE NORTH 00 DEGREES 37 MINUTES 53 SECONDS WEST FOR A DISTANCE OF 404.67 FEET TO A REBAR FOUND ON THE COMMON LINE OF LAND LOTS 252 AND 253; THENCE CONTINUING ALONG SAID LAND LOT LINE AND RUNNING NORTH 89 DEGREES 13 MINUTES 28 SECONDS EAST FOR A DISTANCE OF 244.24 FEET TO A POINT ON THE LAND LOT CORNER FOR LAND LOTS 252,253,228, AND 229; THENCE FOLLOWING ALONG THE COMMON LINE OF LAND LOTS 228 AND 229 AND RUNNING NORTH 89 DEGREES 09 MINUTES 11 SECONDS EAST FOR A DISTANCE OF 471.49 FEET TO A POINT; THENCE NORTH 89 DEGREES 01 MINUTES 24 SECONDS EAST FOR A DISTANCE OF 454.86 FEET TO A REBAR FOUND ON THE WEST RIGHT OF WAY LINE OF CONTINENTAL COLONY PARKWAY (70' R/W); THENCE LEAVING SAID LAND LOT LINE AND FOLLOWING ALONG SAID RIGHT OF WAY LINE OF CONTINENTAL COLONY PARKWAY AND RUNNING SOUTH 00 DEGREES 34 MINUTES 16 SECONDS EAST FOR A DISTANCE OF 933.92 FEET TO A POINT; THENCE CONTINUING ALONG SAID RIGHT OF WAY AND FOLLOWING ALONG A CURVE TO THE RIGHT SAID CURVE HAVING AN ARC LENGTH OF 218.32 FEET AND HAVING A RADIUS OF 322.80 FEET AND BEING SUBTENDED BY A CHORD BEARING OF

ALTA
Exhibit A

Deed Book 62468 Page 589

SOUTH 18 DEGREES 48 MINUTES 14 SECONDS WEST AND A CHORD DISTANCE OF 214.18 FEET TO A POINT; THENCE SOUTH 38 DEGREES 10 MINUTES 43 SECONDS WEST FOR A DISTANCE OF 175.43 FEET TO A POINT; THENCE FOLLOWING ALONG A CURVE TO THE RIGHT SAID CURVE HAVING AN ARC LENGTH OF 94.33 FEET AND A RADIUS OF 603.75 FEET AND BEING SUBTENDED BY A CHORD BEARING OF SOUTH 42 DEGREES 39 MINUTES 18 SECONDS WEST AND A CHORD DISTANCE OF 94.24 FEET TO A POINT; THENCE FOLLOWING ALONG A CURVE TO THE RIGHT SAID CURVE HAVING AN ARC DISTANCE OF 171.60 FEET AND A RADIUS OF 603.75 FEET SAID CURVE BEING SUBTENDED BY A CHORD BEARING OF SOUTH 55 DEGREES 16 MINUTES 26 SECONDS WEST AND A CHORD DISTANCE OF 171.03 FEET TO A POINT; THENCE SOUTH 63 DEGREES 24 MINUTES 59 SECONDS WEST FOR A DISTANCE OF 464.08 FEET TO A POINT; THENCE FOLLOWING ALONG A CURVE TO THE LEFT SAID CURVE HAVING AN ARC LENGTH OF 115.88 FEET AND A RADIUS OF 269.59 FEET SAID CURVE BEING SUBTENDED BY A CHORD BEARING OF SOUTH 51 DEGREES 07 MINUTES 02 SECONDS WEST AND A CHORD DISTANCE OF 114.99 FEET TO A POINT; THENCE SOUTH 59 DEGREES 38 MINUTES 46 SECONDS WEST FOR A DISTANCE OF 268.20 FEET TO A POINT; THENCE SOUTH 60 DEGREES 27 MINUTES 51 SECONDS WEST FOR A DISTANCE OF 78.65 FEET TO  POINT; THENCE SOUTH 63 DEGREES 48 MINUTES 36 SECONDS WEST FOR A DISTANCE OF 68.03 FEET TO A POINT; THENCE SOUTH 69 DEGREES 05 MINUTES 20 SECONDS WEST FOR A DISTANCE OF 48.51 FEET TO A POINT; THENCE SOUTH 71 DEGREES 05 MINUTES 36 SECONDS WEST FOR A DISTANCE OF 117.35 FEET TO THE POINT OF BEGINNING.

SAID TRACT BEING IMPROVED PROPERTY CONTAINING 52.926+/- ACRES OR 2,305,465+/- SQUARE FEET

ALTA
Exhibit A

Deed Book 62468 Page 590
Cathelene Robinson
Clerk of Superior Court

GRANTOR: GOOD DEED 317, LLC, a Delaware limited liability company
LENDER: TP KROG, LLC
DATE OF SECURITY DEED: OCTOBER 1, 2020

### WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO
ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE
PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL
HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER
THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE
FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED SATES, THE VARIOUS
PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER
APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY
RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY
REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND
SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDINC THE LEGAL EFFECT OF
SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN
AFFORDED AN OPPORTUNITY TO  CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO
EXECUTING THIS DEED; (4)   ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF
GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A
BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE
INCORPORATED INTO  AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR                    Good Deed 317, LLC, a Delaware
                                              limited liability company:

_____              _____
Witness                                       by: Ozzie Areu, manager

_____
Notary Public

OFFICIAL SEAL
HARRY S KUNIANSKY
NOTARY PUBLIC - GEORGIA
FULTON COUNTY
My Commission Expires June 11, 2024

### CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who having been first
duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of Borrower's Rights" by
the Borrower, I reviewed with and explained to the Borrower the terms and provisions of the Deed to Secure Debt
and particularly the provisions thereof authorizing the Lender to Sell the secured property by a nonjudicial
foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower of
Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice
and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver
by Borrower and Borrower's rights.  After said review with and explanation to Borrower, Borrower executed the Deed
to Secure Debt and "Waiver of Borrower's Rights".

Based on said review with and explanation to the Borrower, it is my opinion that Borrower knowingly, intentionally
and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such
nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

_____              _____
Notary Public

VICKIE HEBERT
Notary Public, Georgia
Gwinnett County
My Commission Expires
April 16, 2021

8